IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:15-CV-21-D

CAMDEN COUNTY, EAST CAROLINA )
BEHAVIORAL HEALTH, and )
PASQUOTANK COUNTY, )
)
                Plaintiffs, )
)
v. )      **ORDER**
)
NORTHEASTERN COMMUNITY )
DEVELOPMENT CORPORATION, )
UNITED STATES DEPARTMENT OF )
AGRICULTURE, and UNITED STATES )
INTERNAL REVENUE SERVICE, )
)
                Defendants. )

On March 19, 2015, Camden County, East Carolina Behavioral Health, and Pasquotank County (collectively, "plaintiffs") filed an action for declaratory judgment and to quiet title against the United States Department of Agriculture ("USDA"), the United States Internal Revenue Service ("IRS"), the Northeastern Community Development Corporation ("NCDC"), and Southern Bank & Trust Company ("Southern") in Camden County Superior Court [D.E. 1-1].[1] On April 16, 2015, the IRS and USDA removed the case to this court [D.E. 1]. On June 4, 2015, the IRS answered [D.E. 8]. On June 5, 2015, the USDA answered, moved to dismiss, and asserted four counterclaims: for a declaration that the government's exercise of its possibility of reverter was an unconstitutional taking, for quiet title to the property at issue, for breach of contract, and for inverse condemnation [D.E. 9]. On June 16, 2015, the court granted Charles Thomas Steele, Jr.'s ("Steele") motion to

---

[1] On December 1, 2015, the court granted plaintiffs' motion for entry of default against NCDC and Southern [D.E. 33].

intervene as a defendant/intervenor and denied as moot the USDA's motion to dismiss, which it premised on plaintiffs' failure to join Steele as a necessary party [D.E. 14]. On June 19, 2015, plaintiffs answered the USDA's counterclaims [D.E. 15]. On July 10, 2015, Steele answered plaintiffs' complaint and raised the same four counterclaims as the USDA [D.E. 18]. On July 29, 2015, plaintiffs responded to Steele's affirmative defenses and answered his counterclaims [D.E. 26].

On September 20, 2016, Steele and the USDA (collectively, "defendants") moved for summary judgment [D.E. 39] and filed a supporting memorandum [D.E. 41], a statement of material facts [D.E. 42], and supporting exhibits [D.E. 43]. On October 10, 2016, plaintiffs responded in opposition [D.E. 44]. On October 21, 2016, defendants replied [D.E. 45]. As explained below, the court denies defendants' motion for summary judgment.

I.

In 2001 and 2002, the Camden County Board of Commissioners and Pasquotank County Board of Commissioners decided to facilitate the construction of a child care facility. Riggs Dep. [D.E. 43-1] 10–12; Griffin Dep. [D.E. 43-2] 10–11. Between November 29, 2001, and January 9, 2002, the Albemarle Hospital, the Albemarle Mental Health Center, Albemarle Regional Health Services, Camden County, and Pasquotank County (collectively, the "Sellers") negotiated and signed a land contract with NCDC, under which NCDC would pay $18,977.00 for "a fee simple determinable interest" in 1.66 acres of undeveloped land in Camden County, North Carolina ("the Property"). [D.E. 18-3] 3. NCDC's fee simple determinable was subject to a possibility of reverter "in the event [NCDC] fail[ed] to use the Property for a child care facility for at least twenty-five (25) years following the closing date." Id. On June 27, 2002, a deed transferring ownership from the Sellers to NCDC, including the possibility of reverter, was recorded in Book 159, Page 388 in the Camden County Register of Deeds. [D.E. 1-1] 8–18. The deed required that construction of the child

2

care facility "be expeditiously completed." Id. at 14. The Sellers knew that NCDC required financing to construct a child care facility on the Property. Griffin Dep. at 17.

On December 17, 2002, the USDA loaned NCDC $600,000 in exchange for a Deed of Trust on the Property, recorded in Book 166, Page 420 in the Camden County Register of Deeds. [D.E. 43-3]. Thurman E. Burnette was named as the initial trustee of the Deed of Trust. [D.E. 43-3] 5. Steele later replaced Burnette as the trustee. [D.E. 42] ¶ 19. The USDA's closing attorney erroneously told the USDA that the Deed of Trust would be in a first lien position against the Property, and the USDA relied on its lawyer's erroneous representation. [D.E. 43-3] 2. Had the USDA asked Camden County to subordinate its possibility of reverter to the USDA's Deed of Trust, Camden County would have done so. Riggs Dep. at 29–30; see Griffin Dep. at 35 (stating that Pasquotank County could have subordinated its possibility of reverter to the USDA's interest had it been asked).

Using the loan funds, NCDC built a child care facility on the Property. See Riggs Dep. at 23; Griffin Dep. at 22, 47. In August 2013, NCDC stopped operating a child care facility on the Property. [D.E. 42] ¶ 22; [D.E. 43-1] 19. After NCDC stopped operating the child care facility on the Property, the Sellers asserted that they owned the Property because of the deed's reversion clause. See Riggs Dep. at 26–27.

II.

In considering defendants' motion for summary judgment, the court views the evidence in the light most favorable to plaintiffs and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See, e.g., Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87

3

(1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must initially come forward and demonstrate an absence of a genuine issue of material fact or the absence of evidence supporting the nonmoving party's case. Celotex Corp., 477 U.S. at 325. Once the moving party meets its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 586–87.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249. Conjectural arguments will not suffice. See id. at 249–52; Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party . . . cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Similarly, it is insufficient to show a "mere . . . scintilla of evidence in support of the [nonmoving party's] position . . . ; there must be evidence on which the [factfinder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

Defendants' counterclaims require this court to apply North Carolina law. In resolving any disputed issue of state law, the court must determine how the Supreme Court of North Carolina would rule. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co., 433 F.3d 365, 369 (4th Cir. 2005). If the Supreme Court of North Carolina "has spoken neither directly nor indirectly on the particular issue before," this court must "predict how [it] would rule if presented with the issue." Id. (quotations omitted). In making that prediction, the court "may consider lower court opinions[,] . . . treatises, and the practices of other states." Id. (quotation omitted).[2] When predicting

---

[2] North Carolina does not have a mechanism for certifying questions of state law to its Supreme Court. See Town of Nags Head v. Toloczko, 728 F.3d 391, 397–98 (4th Cir. 2013).

4

an outcome under state law, a federal court "should not create or expand [a] [s]tate's public policy." Time Warner Entm't-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (first alteration in original) (quotation omitted); see Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

III.

Defendants seek summary judgment on five claims: (1) plaintiffs' request for a declaration that they own the Property, unencumbered by the USDA's lien; (2) plaintiffs' action for quiet title; (3) defendants' request for a declaration that the transfer of the Property to plaintiffs via the possibility of the reverter amounted to an unconstitutional taking; (4) defendants' action for quiet title; and (5) defendants' inverse-condemnation counterclaim.[3]

A.

Defendants seek summary judgment concerning plaintiffs' request for a declaration that, because of the deed's reversion clause, plaintiffs now have fee simple absolute ownership of the Property and any improvements made to the Property. "A fee simple determinable estate terminates automatically upon the occurrence of the event, which gives rise to the reverter," without the need for any action by the holder of the possibility of reverter "to bring about the reversion of the fee simple absolute to" the holder of the reverter. City of Charlotte v. Charlotte Park & Rec. Comm'n, 278 N.C. 26, 31, 178 S.E.2d 601, 605 (1971); Station Assocs., Inc. v. Dare Cty., 350 N.C. 367, 370, 513 S.E.2d 789, 792 (1999) ("An estate in fee simple determinable is created by a limitation in a fee simple conveyance which provides that the estate shall automatically expire upon the occurrence of a certain subsequent event."); Nelson v. Bennett, 204 N.C. App. 467, 471, 694 S.E.2d 771, 774

---

[3] Defendants did not seek summary judgment on their breach-of-contract counterclaim.

5

(2010); see Restatement (Third) of Property (Wills & Don. Trans.) § 24.3 & cmt. b. (2017). In North Carolina, "no one can transfer a better title than he himself possesses." Miller v. Tharel, 75 N.C. 148, 152 (1876). "[A]lthough a deed of trust securing a debt may serve the purpose and perform the function of a mortgage, the deed of trust is an absolute and indefeasible conveyance of the subject matter thereof for the purposes expressed." Am. Jur. 2d Mortgages § 121 (2017) (footnotes omitted); see Va.-Carolina Laundry Supply Corp. v. Scott, 267 N.C. 145. 153, 148 S.E.2d. 1, 5 (1966). In North Carolina, "[n]o deed of trust or mortgage of real or personal property . . . shall be valid to pass any property as against lien creditors . . . but from the time of registration thereof as provide in this Article." N.C. Gen. Stat. § 47-20. No "conveyance of land . . . shall be valid to pass any property interest as against lien creditors or purchasers for valuable consideration from the donor . . . but from the time of registration thereof in the county where the land lies." Id. § 47-18.

The Sellers transferred a fee simple determinable interest to NCDC and retained a possibility of reverter if NCDC ceased to operate a child care facility on the Property within 25 years. A fee simple determinable interest subject to the Sellers' possibility of reverter was the only interest NCDC could transfer to the USDA, in the form of the Deed of Trust, as security for its loan. See Miller, 75 N.C. at 152. Under North Carolina's recording statutes, the Deed of Trust, which was signed and recorded after the Sellers' deed transferring the Property to NCDC was recorded, would not be valid to transfer any post-reverter interest. In August 2013, NCDC ceased operating a child care facility on the Property. At that time, title to the Property automatically reverted to the Sellers. See, e.g., Station Assocs., Inc., 350 N.C. at 370, 513 S.E.2d at 792; City of Charlotte, 278 N.C. at 31, 178 S.E.2d at 605. Therefore, the court denies defendant's motion for summary judgment on plaintiffs' request for a declaratory judgment that plaintiffs own the Property.

In opposition, defendants assert a "betterments" defense under N.C. Gen. Stat. § 1–340 and argue that it would be inequitable for the Sellers to obtain title to the improvements on the Property without paying for those improvements. Section 1–340 provides:

> A defendant against whom a judgment is rendered for land may, at any time before execution, present a petition to the court rendering the judgment, stating that he, or those under whom he claims, while holding the premises under a color of title believed to be good, have made permanent improvements thereon, and praying that he may be allowed for the improvements, over and above the value of the use and occupation of the land. The court may, if satisfied of the probable truth of the allegation, suspend the execution of the judgment and impanel a jury to assess the damages of the plaintiff and the allowance to the defendant for the improvements. In any such action this inquiry and assessment may be made upon the trial of the cause.

N.C. Gen. Stat. § 1–340.

Plaintiffs respond that sovereign immunity bars the betterments defense. Absent express statutory waiver, counties in North Carolina enjoy sovereign immunity when performing a governmental function. See, e.g., Estate of Williams ex rel Overton v. Paquotank Cty. Parks & Recreation Dept., 366 N.C. 195, 198–2003, 732 S.E.2d 137, 140–43 (2012). Under N.C. Gen. Stat. § 41-10.1, North Carolina has waived its sovereign immunity only as to "claim[s] of title to land which has not been taken by condemnation," but that waiver "cannot be broadened to include a claim for betterments under N.G. Gen. Stat. § 1–340." Fabrikant v. Currituck Cty., 174 N.C. App. 30, 40, 621 S.E.2d 19, 26–27 (2005); see State v. Taylor, 322 N.C. 433, 437, 368 S.E.2d 601, 603–04 (1988). Defendants attempt to distinguish asserting "betterments" as a defense, rather than as an affirmative claim, and argue that plaintiffs waived their sovereign immunity to defendants' betterments defense by waiving plaintiffs' sovereign immunity to the claim of title to land. In Taylor, however, the Supreme Court of North Carolina rejected that argument. See Taylor, 322 N.C. at 435–36, 368 S.E.2d at 602–03. Thus, the court rejects defendants' "betterments" defense.

7

B.

As for the parties' competing quiet-title claims, "[a]n action [to quiet title] may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims." N.C. Gen. Stat. § 41-10. To the extent the parties dispute ownership of the Property, the Sellers own the Property in fee simple absolute, unencumbered by the USDA's lien, by operation of the possibility of reverter. See, e.g., Station Assocs., Inc., 350 N.C. at 370, 513 S.E.2d at 792; City of Charlotte, 278 N.C. at 31, 178 S.E.2d at 605. Therefore, the court denies defendants' motion for summary judgment as to both quiet-title claims.

C.

As for defendants' inverse-condemnation counterclaim, a person may not prevail on a claim under the Fifth Amendment's Takings Clause, as incorporated against the states by the Fourteenth Amendment, without first seeking and being denied compensation from the state. See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 195 (1985); Toloczko, 728 F.3d at 399. A claimant may not "simultaneously bring a claim for compensation under state law and a claim under the Takings Clause in federal court; rather, the [claimant] must first pursue [any] state-law claim for compensation." Sansotta v. Town of Nags Head, 724 F.3d 533, 544 (4th Cir. 2013). A claimant who is in federal court because of his own litigation strategy and who has not yet sought a claim for compensation under state law in state court usually cannot proceed on a Takings Clause claim; however, this requirement is prudential, not jurisdictional. See San Remo Hotel, L.P. v. City & Cty. S.F., Cal., 545 U.S. 323, 346 (2005); Toloczko, 728 F.3d at 399. A court may decide a state-law compensation claim and a Takings Clause claim together to avoid "piecemeal litigation." Toloczko, 728 F.3d at 399.

8

This case presents the unusual situation where federal-government defendants assert a takings claim against state-government entities. The federal-government defendants are, however, in federal court because of their own litigation strategy, specifically their choice to remove this action from Camden County Superior Court. Nevertheless, because the court already must decide questions about ownership of the Property, the court exercises its discretion to decide this counterclaim and avoid piecemeal litigation. See id.

Under North Carolina law, a property owner may seek compensation for a taking through an inverse-condemnation proceeding. See N.C. Gen. Stat. § 40A-51. Section 40A-51 provides a remedy (1) if a property owner's property was taken by a public condemnor listed in N.C. Gen. Stat. § 40A-3(b) or (c) (2) by an "act or omission" as specified in N.C. Gen. Stat. § 40A-3(b) & (c), and (3) if no complaint containing a declaration of taking has been filed. See Wilkie v. City of Boiling Spring Lakes, 796 S.E.2d 57, 62–63 (N.C. Ct. App. 2016). The court assumes without deciding that a county acquiring land for the public benefit is a public condemnor. See id. at 62. As discussed, however, defendants had no property interest in the Property beyond a fee simple determinable subject to the Sellers' possibility of reverter. Therefore, plaintiffs did not take any property owned by defendants. As for the second prong, the possibility of reverter was not triggered by any act or omission of plaintiffs. Rather, when the NCDC ceased to use the Property to operate a child care facility, the estate fee simple determinable automatically expired and effected the reversion of the fee simple absolute to the holder of the reverter. See, e.g., Station Assocs., Inc., 350 N.C. at 370, 513 S.E.2d at 792; City of Charlotte, 278 N.C. at 31, 178 S.E.2d at 605.[4] Therefore, defendants'

---

[4] If the court considered the mere creation of the possibility of reverter as the "taking," rather than the moment the transfer occurred, the 24-month statute of limitations under N.C. Gen. Stat. § 40A-51(a) bars the claim.

9

inverse-condemnation counterclaim fails because they cannot show an "act or omission" on the part of the condemnor or that they owned the property when it was "taken." Accordingly, the court denies defendants' motion for summary judgment on their inverse-condemnation counterclaim.

D.

Defendants contend that plaintiffs' lawsuit—which seeks to establish ownership of the Property in fee simple absolute—constitutes a taking of defendants' property without just compensation in violation of the Fifth Amendment, as applied to the states through the Fourteenth Amendment, and North Carolina constitutional and common law. The Fifth Amendment's Takings Clause applies to the states through the Fourteenth Amendment. See, e.g., Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536 (2005); Washlefske v. Winston, 234 F.3d 179, 183 (4th Cir. 2000). It provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. This prohibition "was designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49 (1960). Because the Takings Clause protects private property but does not create property interests, courts consult state law to determine whether a constitutionally protected property interest exists. See Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972); In re Premier Automotive Servs., Inc., 492 F.3d 274, 282 (4th Cir. 2007); Washlefske, 234 F.3d at 183.

Although the North Carolina Constitution does not expressly prohibit governments or their entities from taking private property for public use without just compensation, the Supreme Court of North Carolina has located such a prohibition in the Law of the Land Clause. See, e.g., Finch v. City of Durham, 325 N.C. 352, 362–63, 384 S.E.2d 8, 14 (1989). The Supreme Court of North Carolina employs the same standard for determining whether a government took property in

10

violation of the North Carolina Constitution as the Supreme Court of the United States does when assessing a Fifth Amendment takings claim. See, e.g., Finch, 325 N.C. at 371–72, 384 S.E.2d at 19; N.C. Dep't of Transp. v. Cromartie, 214 N.C. App. 307, 314–15, 716 S.E.2d 361, 367 (2011).

Under North Carolina law, plaintiffs could not have deprived defendants of a property interest in the Property because defendants had no such property interest after NCDC stopped operating a child care facility on the Property. As discussed, the greatest interest NCDC could transfer to defendants was the interest NCDC had in the Property. That interest was a fee simple determinable interest, subject to the Sellers' possibility of reverter if the NCDC failed to use the Property for a child care facility for at least 25 years following the closing date. When that condition occurred, the fee simple determinable automatically ended, and the Sellers' interest became a fee simple absolute interest. See, e.g., Station Assocs., Inc., 350 N.C. at 370, 513 S.E.2d at 792; City of Charlotte, 278 N.C. at 31, 178 S.E.2d at 605. Therefore, when NCDC failed to use the Property for a child care facility in August 2013, defendants simultaneously ceased having any interest in the Property, and the Sellers owned a fee simple absolute interest. That defendants apparently did not now about the possibility of reverter due to the mistake of USDA's closing attorney is irrelevant because a "unilateral expectation" does not create a property interest. See, e.g., Roth, 408 U.S. at 57. Because defendants had no property interest that was taken, their takings claim fails.

In opposition, defendants argue that a taking occurred because they had an interest in the Property trough the Deed of Trust, and, after the reversion occurred, they have no interest in the Property. In support, defendants cite Armstrong v. United States, 364 U.S. 40 (1960). In Armstrong, the federal government contracted with a shipbuilding company to build eleven ships. Id. at 41. The contract empowered the federal government to require the shipbuilding company to transfer title to the federal government of all uncompleted work and manufacturing materials if the shipbuilding

11

company defaulted. Id. The shipbuilding company used laborers and suppliers in Maine, which provided by state statute that "[w]hoever furnishes labor or materials for building a vessel" had a lien on the vessel or the materials furnished before they become part of the vessel that could be enforced by attachment. Id. The shipbuilding company defaulted, and the federal government exercised its contractual right with the shipbuilding company to obtain title to the uncompleted vessels and unused materials. Id. at 42–43. When the title transfer occurred, the shipbuilding company had not paid the laborers and suppliers for some manufacturing materials that had not yet become part of the vessels. Id. at 41.

The laborers and suppliers claimed that they had valid liens under Maine law on the hulls and manufacturing materials and that the federal government's actions "destroyed their liens by making them unenforceable and that this [act] constituted a taking of their property without just compensation in violation of the Fifth Amendment." Id. at 42. The Court held that the shipbuilding company had title to the property when laborers and suppliers furnished the materials and that private liens could attach to such property while the shipbuilding company owned the property. See id. at 43. The Court also held that the laborers and suppliers had "a compensable property interest" under Maine lien law within the meaning of the Takings Clause before the transfer of title to the federal government and that these liens were enforceable under Maine law by attachment against the hulls and materials. See id. at 44–46. The Court also held that, after title to the property transferred to the federal government, the liens were still valid, but the federal government's sovereign immunity destroyed the laborers' and suppliers' "property rights under their liens . . . ." Id. at 46. The Court then held that the destruction of the liens under these circumstances constituted a "taking." See id. at 47–48.

12

Armstrong does not help the defendants. As discussed, under North Carolina law, the Deed of Trust was a conveyance of title. Likewise, as discussed, under North Carolina law, the Deed of Trust could convey to the trustee only a fee simple determinable interest in the Property subject to the Sellers' possibility of reverter. Once the NCDC ceased to use the Property to operate a child care facility, the estate fee simple determinable automatically expired and effected the reversion of the fee simple absolute to the holders of the reverter.

Alternatively, to the extent the Deed of Trust was a security interest, it was not a pre-existing interest in the Property, like the laborers and suppliers in Armstrong had. Rather, at most, it was a security interest created after the Sellers' possibility of reverter was recorded in the Camden County Register of Deeds. Moreover, unlike the laborers and suppliers in Armstrong who continued to have valid liens under state law after the property transferred to the federal government, defendants in this case did not continue to have a property interest in the Property under state law once the reversion occurred.

Additional factors weigh against finding a taking in this case. First, the termination of defendants' fee simple determinable interest in the Property was not the result of any government action of the plaintiffs. Cf. Lingle, 544 U.S. at 543 (referring to "government action" as the conduct underlying a violation of the Takings Clause). Rather, the termination resulted from NCDC's act of ceasing to use the Property to operate a child care facility. Furthermore, accepting defendants' takings argument would lead to the absurd result that neither state governments nor the federal government could ever hold a reversionary interest in real property—whether a possibility of reverter, a right of entry, or the reversionary interest that accompanies a life estate—because the vesting of those interests would constitute a "taking." Although this court has not located any case that has addressed this precise issue, the court holds that when a governmental entity holds a

13

possibility of reverter in real property under state law, the government does not "take" that property within the meaning of the Fifth Amendment if the triggering event occurs and ownership of the real property automatically reverts to the government under state law. Accordingly, the court denies defendants' motion for summary judgment on its takings claim.

IV.

In sum, defendants' motion for summary judgment [D.E. 39] is DENIED.

SO ORDERED. This 17 day of May 2017.

JAMES C. DEVER III
Chief United States District Judge